UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE SULIER,

          Plaintiff

v.

ANDREW SAUL,
COMMISSIONER OF
SOCIAL SECURITY,[1]

          Defendant.

_____/

Civil Action No.: 19-11078
Honorable Victoria A. Roberts
Magistrate Judge Elizabeth A. Stafford

**REPORT AND RECOMMENDATION ON CROSS-
MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 16, 17]**

    Plaintiff Michelle Sulier appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1)(B). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

---

[1] Under Federal Rule of Civil Procedure 25(d), Saul is the successor defendant.

- the Commissioner's motion [ECF No. 17] be **GRANTED**;

- Sulier's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

   A.  **Sulier's Background and Disability Applications**

Born October 15, 1958, Sulier was 54 years old at the time of her alleged onset date of July 1, 2013. [ECF No. 11-3, PageID.153]. She submitted her application for benefits in October 2016 and was insured for DIB purposes through March 31, 2015. [ECF No. 11-2, PageID.52, 54]. Sulier had previous work as a waitress and a housekeeper. [*Id.*, PageID.61]. She claimed to be disabled from psoriasis, rheumatoid arthritis, gout, fatigue, post-surgery stage I kidney cancer. [ECF No. 11-3, PageID.154].

After the Commissioner denied her disability application initially, Sulier requested a hearing, which took place in May 2018, during which she and a vocational expert (VE) testified. [ECF No. 11-2, PageID.67-119]. In a September 2018 written decision, the ALJ found Sulier not disabled. [*Id.*, PageID.52-62]. The Appeals Council denied review, making the ALJ's

decision the final decision of the Commissioner, and Sulier timely filed for judicial review. [*Id.*, PageID.33-35; ECF No. 1].

### B. The ALJ's Application of the Disability Framework Analysis

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[2] *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will

---

[2] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Sulier was not disabled. At the first step, she found that she had not engaged in substantial gainful activity since July 1, 2013. [ECF No. 11-2, PageID.54]. At the second step, the ALJ found that Sulier had the severe impairments of "rheumatoid arthritis; history of psoriasis; and a renal cell carcinoma with partial right nephrectomy." [*Id.*]. The ALJ determined that Sulier's gout, hypertension, obesity and depression were non-severe impairments. [*Id.*, PageID.54-55]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*, PageID.56].

Between the third and fourth steps, the ALJ found that Sulier had the RFC

> to perform light work as defined in 20 C.F.R. 404.1567(b) except she could occasionally climb ramps and stairs, never

4

>climb ladders, ropes, scaffolds, and could balance, kneel, stoop, crouch, but never crawl. She was limited to frequent handling and fingering with the bilateral upper extremities. She was limited to no foot controls with bilateral lower extremities. She could occasionally work in conditions of humidity or in extreme heat or extreme cold.

[*Id.*]. At step four, the ALJ found that Sulier could perform her past relevant work. [*Id.*, PageID.61]. The ALJ thus concluded Sulier was not disabled. [*Id.*, PageID.62].

## II.    ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Sulier argues that the ALJ's step four finding is legally insufficient and unsupported by substantial evidence. She also contends that the ALJ erred by rejecting the treating physician's opinions, basing the RFC finding on her own interpretation of raw medical data, and rejecting Sulier's allegations and testimony. [ECF No. 16, PageID.911-912]. The Court disagrees and recommends that the ALJ's decision be affirmed.

## B.

At step four, an ALJ considers the claimant's ability to perform past relevant work. "The RFC to meet the physical and mental demands of jobs a claimant has performed in the past (either the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy) is generally sufficient for a finding of 'not disabled.'" SSR 82-62, 1982 WL 31386 (Jan. 1, 1982). The ALJ must carefully consider the claimant's past work experience to ensure that the available facts support a conclusion about the claimant's ability to perform the functional activities required for that prior work. *Id.* "The claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level[,] exertional demands and nonexertional demands of such work." *Id.*

6

DOT descriptions of functional demands and job duties may be relied on to define a job as it is ordinarily performed in the national economy. SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). But "composite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT. Such situations will be evaluated according to the particular facts of each individual case." *Id.; see also Bridges v. Comm'r of Soc. Sec.*, Case No. 18-10520, 2019 WL 1503139, at *4 (E.D. Mich. Feb. 1, 2019).

Sulier challenges the ALJ's step four finding that she could return to her past work as a housekeeper, as it is generally performed in the Dictionary of Occupational Titles (DOT). [*Id.*, PageID.919-925]. She argues that this finding is flawed because the decision did not describe the actual job duties of her past job as a housekeeper, and the ALJ thus did not perform the fact-finding required for a determination that Sulier could perform her past work. [*Id.*]. Sulier asserts that only her past position as a waitress was described in her pre-hearing statements and in the VE's summary and classification of past work. She also argues that, based on the limited evidence in the record regarding her past work duties, her past housekeeper work may have been a composite job, without a DOT counterpart, and thus should not have been evaluated as work as generally

performed in the national economy.  [*Id*.].

Regardless of the merits of Sulier's argument, she waived it by not raising it during the hearing or at any point before the ALJ's decision. *Bridges,* 2019 WL 1503139 at *4.  Case law in the Sixth Circuit requires that objections to VE testimony, or to the characterization of a claimant's past relevant work at step four, must be made at the hearing or at some point before the ALJ's decision in order to be preserved for argument before the court.  *Id.* (collecting cases).

After the ALJ presented the VE with a hypothetical RFC consistent with the one ultimately included in the decision, the VE testified that such a claimant could perform Sulier's past relevant work as a waitress or a housekeeper, as those positions are typically listed in the DOT, but not as she had actually performed them.  [ECF No. 11-2, PageID.112-114]. Sulier's attorney questioned the VE, but he did not question or challenge the VE's conclusions about her past relevant work, including that of housekeeper, or her ability to perform it under the hypothetical given.  [*Id.*, PageID.116-117].  Nor did her attorney elicit any testimony about the demands and requirements of her past relevant work.  [*Id.*].  Sulier failed to object to the VE's testimony or to the sufficiency of the fact-finding about her past relevant work at any time before the ALJ's decision, and she has

8

thus waived any argument on these issues. And because Sulier had the burden of proof at step four, and would have been the primary source of the allegedly absent facts regarding the job requirements for her past work, any evidentiary deficiencies are the fault of Sulier, and not the ALJ. SSR 82-62; *Preslar,* 14 F.3d at 1110; *see also, Dell v. Comm'r of Soc.Sec.*, 2019 WL 3068614, at *7-11 (N.D. Ohio July 12, 2019).

In addition, even if the ALJ erred by finding that Sulier could return to past work as a housekeeper, it would be a harmless error. "When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" *Kobetic v. Comm'r of Soc.Sec.,* 114 F. App'x 171, 173 (6th Cir. 2004) (quoting *NLRB v. Wyman-Gordon Co.,* 394 U.S. 759, 766 n. 6 (1969). Indeed, remand is not required unless there is reason to believe that it might lead to a different result. *Id.* (citing *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989).

Here, the ALJ found that Sulier could return only to her past relevant work as a housekeeper, and not as a waitress, but did so after incorrectly stating that the VE testified that Sulier would be unable to perform the past relevant work as a waitress. [ECF No. 11-2, PageID.62]. The VE did testify that, under a hypothetical including limitations to simple, routine, repetitive tasks, and a nonproduction-rate pace, a similarly-situated

9

claimant would be unable to perform the waitress position. [ECF No. 11-2, PageID.115]. But under the hypothetical ultimately adopted by the ALJ as Sulier's RFC, without those limitations, the VE testified that a claimant could perform both the waitress and housekeeper positions as they were ordinarily performed. [*Id.*, PageID.56, 60, 113-115]. Remand based on an error in the ALJ's finding that Sulier had past work as a housekeeper would be fruitless because the VE's testimony supports a finding that Sulier's RFC permits a return to the undisputed past work of waitress. [*Id.*]. The Court does not find reversible error at step four.

### C.

Sulier asserts that the opinions of her treating primary care physician, Cara Derck, D.O., supplied the necessary findings to establish her rheumatoid arthritis as disabling, and that the ALJ erred in assigning it no weight. [ECF No. 16, PageID.925-929]. The ALJ accorded Dr. Derck's opinions no weight and found them not probative because Dr. Derck did not examine or treat Sulier during the relevant period between the onset date and her date last insured (DLI). [ECF No. 11-2, PageID.59]. Dr. Derck's opinions say that they reflect Sulier's functional limitations as of July 1, 2013, but she did not begin treating Sulier until June 2015, three months

after the DLI, and did not provide her opinions until February 2018, nearly three years after the DLI. [ECF No. 11-9, PageID.880-886].

A retrospective medical opinion may be entitled to the same deference given to all treating physician opinions. *Terry v. Comm'r of Soc.Sec.*, 2015 WL 12712079, *10 (E.D. Mich. July 14, 2015). But a retrospective opinion is entitled to no deference if the treating physician had no first-hand knowledge of the claimant's condition before her date last insured. *Barnhart v. Comm'r of Soc.Sec.*, 18-CV-11753, 2019 WL 4866158, *3 (E.D. Mich. June 24, 2019), *adopted*, 2019 WL 3955809 (E.D. Mich. Aug. 22, 2019); *see also Little v. Comm'r of Soc. Sec.*, 2017 WL 4276968, *4 (E.D. Mich. Sept. 27, 2017) (citing *Clendening v. Astrue*, 2011 WL 1130448, *5 (N.D. Ohio 2011), *aff'd*, 482 F. App'x 93 (6th Cir. 2012)). Dr. Derck's statements do not explain how she had any basis on which to offer opinions concerning Sulier's condition before June 2015. She does not indicate that she reviewed medical records or test results from 2013 to 2015, nor does she say that she communicated with any physicians who treated Sulier during that period. [ECF No. 11-9, PageID.880-886]. Because Dr. Derck's statements do not explain the bases of her opinions about Sulier's condition before she began treating her, the ALJ properly

11

declined to give the opinions any weight. *See Barnhart,* 2019 WL 3955809, at *3.

### D.

Sulier argues that the RFC was not supported by substantial evidence because it was the product of the ALJ's interpretation of raw medical data. [ECF No. 16, PageID.929-933]. But the RFC here was not based on the ALJ's attempt to construe raw medical data, such as diagnostic imaging or test results. She stated explicitly that she found the assessment of the non-examining medical source, Robert Roschmann, M.D, to be well supported by citations to the medical record and generally consistent with the objective medical evidence for the relevant time period. [ECF No. 11-2, PageID.59]. She afforded Dr. Roschmann's assessment significant weight and incorporated it into her RFC. [*Id.*]. But the ALJ imposed greater manipulative and foot limitations than assessed by Dr. Roschmann based on Sulier's testimony and uncontrolled psoriasis. [*Id.*, PageID.59-60].

Courts in this circuit have routinely found that RFC assessments that are more restrictive than the opinion evidence to be supported by substantial evidence. *See, e.g., Drinkwine v. Comm'r of Soc. Sec.,* 18-12327, 2019 WL 4866144, at *3 (E.D. Mich. Aug. 8, 2019), *adopted*, 2019

WL 4626674 (E.D. Mich. Sept. 24, 2019); *Chess v. Berryhill*, 2019 WL 845986, at *7 (E.D. Tenn. Jan. 3, 2019). An ALJ's residual functional capacity determination can be supported by substantial evidence even without a fully consistent physician opinion. *Mokbel-Aljahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401-02 (6th Cir. 2018). Indeed, "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019). The ALJ made that connection here and Sulier has failed to show an error that would require remand of this matter.

### E.

Sulier also takes issue with the ALJ's subjective symptom evaluation. Under Social Security Ruling (SSR) 16-3p, when determining whether a claimant is disabled, the ALJ must consider not only the claimant's "symptoms, including pain," but also "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical and other evidence in the individual's record." 2016 WL 1119029, at *1. An ALJ's subjective symptom evaluation should not be disturbed "absent compelling

reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001).[3] At the same time, "such determinations must find support in the record." *Rogers*, 486 F.3d at 241.

Here, the ALJ found that although her impairments could reasonably cause the alleged symptoms, Sulier's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." [ECF No. 11-2, PageID.58, 60-61]. The ALJ reasoned that Sulier's claims that she could not perform work were inconsistent with her reported daily activities, including shopping, household chores, mowing the lawn (on a rider mower), driving, and babysitting on a regular basis. [*Id.*]. Sulier contends that her regular babysitting did not begin until after her DLI, but based on her testimony at the hearing that her condition that day was the same as it was in 2013, the Court finds that the ALJ properly considered

---

[3] SSR 16-3p eliminated use of the term "credibility" from official policy and clarifies that a "subjective symptom evaluation is not an examination of an individual's character." *Rhinebolt v. Comm'r of Soc. Sec.*, No. 2:17-CV-369, 2017 WL 5712564, at *8 (S.D. Ohio Nov. 28, 2017), *adopted*, 2018 WL 494523 (S.D. Ohio Jan. 22, 2018). Despite the linguistic clarification, courts continue to rely on pre-SSR 16-3p authority providing that the ALJ's credibility determinations are given great weight. *See, e.g., Kilburn v. Comm'r of Soc. Sec.*, No. 1:17-CV-603, 2018 WL 4693951, at *7 (S.D. Ohio Sept. 29, 2018); *Duty v. Comm'r of Soc. Sec.*, No. 2:17-CV-445, 2018 WL 4442595, at *6 (S.D. Ohio Sept. 18, 2018).

the babysitting in evaluating her daily activities along with her alleged symptoms. [ECF No. 11-2, PageID.81].

The ALJ also noted that the objective medical evidence, treatment and Sulier's reports during the relevant period did not support her allegations of disabling symptoms. The ALJ referenced the treatment reports of Martin Gerber, D.O., Sulier's treating rheumatologist during the relevant period. Dr. Gerber reported that Sulier's joint disease was well controlled, with few flare ups that responded well to treatment with short courses of steroids. [ECF No. 11-8, PageID.523, 525, 528, 530, 534, 537, 538]. The Court finds no compelling reason to disturb the ALJ's subjective symptom assessment.

### III. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that the Commissioner's motion [ECF No. 17] be **GRANTED**; that Sulier's motion [ECF No. 16] be **DENIED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

                                                s/Elizabeth A. Stafford
                                                ELIZABETH A. STAFFORD
Dated: July 17, 2020                    United States Magistrate Judge

## **NOTICE TO THE PARTIES ABOUT OBJECTIONS**

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*.*  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 17, 2020.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager
